UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

XIAOQUAN CHEN,

                 Petitioner,

-against-

JUDITH ALMODOVAR, *Acting Director of the New York City Field Office of Immigration and Customs Enforcement*, KRISTI NOEM, *Secretary of the Department of Homeland Security*, and PAMELA BONDI, *Attorney General*,

                 Respondents.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/4/2025

1:25-cv-8350-MKV

OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS

MARY KAY VYSKOCIL, United States District Judge:

    Petitioner Xiaoquan Chen is a Chinese national who illegally entered the United States in December 2023 and "who has not been admitted or paroled" [ECF No. 1-1 ("Pet., Ex. A") at 1]. He was apprehended by United States Customs and Border Protection ("CBP") and, shortly thereafter, released [ECF No. 11 ("Hampton Decl.") ¶ 5]. After his release, Petitioner filed an application for asylum and, after certain interim proceedings, an immigration judge set a hearing date for December 2028 [ECF No. 1-3]. Hampton Decl. ¶ 10. In the interim, however, on October 8, 2025, U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody, and subsequently transferred him first to a detention facility in New Jersey and thereafter to a facility in Mississippi, pending the resolution of his removal proceedings.

    The day he was taken into custody, Petitioner, through counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 [ECF No. 1 (the "Petition" or "Pet.")]. He thereafter filed a request for emergency relief [ECF No. 6]. Petitioner seeks his immediate release from custody or, in the alternative, a ruling that he is entitled to a bond hearing. Pet. ¶ 3. Respondents have filed a response in opposition to the Petition together with a memorandum of law, the

1

Declaration of Supervisory Detention and Deportation Officer Lige Hampton, and several exhibits [ECF Nos. 9 ("Response"), 10 ("Gov. Opp."), 11 ("Hamilton Decl.")]. Petitioner has filed a reply memorandum of law [ECF No. 12 ("Reply")].

The key issue in this case is whether Petitioner is subject to mandatory detention pending the resolution of his removal proceedings pursuant to 8 U.S.C. § 1225. The statute provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained*." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). On any reasonable interpretation of the statute and the undisputed facts of this case, the statute applies to Petitioner. Thus, for the reasons set forth below, the Petition is DENIED in its entirety.

## I.     BACKGROUND

As Petitioner represents in his Reply: "The facts of this case are not in dispute." Reply at 1. Petitioner Xiaoquan Chen is a Chinese national. Pet ¶ 8. On or about December 13, 2023, he unlawfully entered the United States, without inspection, at or near Tecate, California, and U.S. Customs and Border Protection ("CBP") apprehended him. Hampton Decl. ¶¶ 3, 4; *see* Pet. ¶ 12; Pet., Ex. A at 1. On December 15, 2023, CBP issued and served Petitioner with a Notice to Appear ("NTA") charging him with being removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). *See* Pet., Ex. A; Hampton Decl. ¶ 5.

The NTA, which Petitioner received shortly after his initial apprehension, clearly states: "you are subject to removal from the United States . . . ." Pet., Ex. A. Specifically, the NTA "alleges," and Petitioner does not dispute, "You are an alien present in the United States who has not been admitted or paroled." *Id*. The NTA states that, based on those allegations, Petitioner is subject to removal pursuant to Section 212(a)(6)(A)(i) of the INA. *Id.* That statute provides that

2

"[a]n alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is inadmissible." 8 U.S.C. § 1182(a)(6)(A)(i).

According to the government, "Chen was then released on his own recognizance due to lack of available bed space and ordered to appear before an immigration judge at 26 Federal Plaza, New York, New York, on March 12, 2024." Hampton Decl. ¶ 5. Petitioner alleges "on information and belief" that he was released pursuant to "an order of release on recognizance under section 236 of the INA, 8 U.S.C. § 1226." Pet. ¶ 12. However, Petitioner concedes that he "is not in possession of the release order." Pet. ¶ 12 n.1. Rather, Petitioner simply asserts that a release order pursuant to section 236 (*i.e.*, 8 U.S.C. § 1226) "is the only conceivable mechanism by which ICE could have released Mr. Chen."[1] Pet. ¶ 12 n.1.

After his release, in February 2024, Petitioner, through counsel, "filed written pleadings [in which] he conceded the allegations and charge of removability in the NTA." Hamilton Decl. ¶ 7. Petitioner also filed an application for asylum [ECF No. 1-2 ("Pet., Ex. B")]. *See id.*; Pet. ¶ 8. Thereafter, in February 2025, an immigration judge set an individual hearing date for December 2028. Hamilton Decl. ¶ 10.

On August 27, 2025, ICE directed Petitioner to report to ICE at 26 Federal Plaza, New York, NY on October 8, 2025. *Id*. ¶ 12. Petitioner reported to ICE as directed and, according to

---

[1] One of the government's submissions indicates that an "Order of Release on Recognizance, form I-220" was issued to Petitioner [ECF No. 9-2 at 2]. Petitioner includes a link in his reply brief to a "Sample ICE Form I-220A," which form cites to section 236 [ECF No. 12 ("Reply") at 1 n.1]. However, as Petitioner concedes, he has not shown that he actually received such a document. Pet. ¶ 12 n.1. It is the Court's impression that there also exists, at minimum, a Form I-220B. *See* https://www.ice.gov/doclib/detention/checkin/I_220B_OSUP.pdf. In any event, as discussed below, "conceivable" explanations for Petitioner's release include the Executive Branch failing to enforce 8 U.S.C. § 1225(b)(2).

3

the government, Petitioner "was taken into custody pursuant to 8 U.S.C. § 1225." *Id.* ¶ 13.[2] The government has submitted a document entitled "Record of Deportable/Inadmissible Alien," which describes Petitioner as an "ALIEN PRESENT WITHOUT ADMISSION OR PAROLE" [ECF No. 9-2 ("Record") at 2]. It notes that Petitioner has "made no claims of United States Citizenship or Lawful Permanent Resident of the United States" and was "found . . . inadmissible" when he was "encountered" at the border. Record at 2. It further notes that he "declined the Voluntary Departure offer." Record at 3.

On the day he was taken into custody, Petitioner, through counsel, filed the Petition [ECF No. 1 ("Pet.")]. He seeks release from ICE custody or, in the alternative, an order declaring that he is entitled to a bond hearing. *See* Pet. ¶ 3. He thereafter filed a proposed order to show cause seeking emergency relief [ECF No. 6]. The gravamen of Petitioner's argument is that, in December 2023, he was released into the United States pursuant to Section 236 of the INA, 8 U.S.C. § 1226, and the government has violated his statutory and constitutional rights by now detaining him pursuant to Section 235 of the INA, 8 U.S.C. § 1225. *See* Pet. ¶¶ 12, 16, 21–28. As explained below, Section 1226 provides that "an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States" and entitles the alien to request a bond hearing before an immigration judge. 8 U.S.C. § 1226(a) (emphasis added); *see* 8 C.F.R. § 236.1(d)(1). Section 1225, by contrast, provides for *mandatory* detention and does not "say[] anything whatsoever about bond hearings." *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

After Petitioner requested emergency relief, the Court ordered the government to respond in less than a week [ECF No. 7]. The government opposes the Petition [ECF Nos. 9 ("Response"),

---

[2] The Court notes, however, that the "Warrant for Arrest of Alien" the government submitted is addressed, "To: any immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations, to serve warrants of arrest for immigration violations" [ECF No. 9-3].

4

10 ("Gov. Opp."), 11 ("Hamilton Decl.")]. It argues that "Petitioner is lawfully detained pursuant to Section 1225(b), and he is not entitled to a bond hearing." Gov. Opp. at 10. In the alternative, the government argues that, if the Court determines that Petitioner is not lawfully detained under Section 1225, "ICE nevertheless has authority to detain Petitioner pursuant to Section 1226(a)," although the government agrees that, in that case, Petitioner may request a bond hearing before an immigration judge. *Id.* at 16–18.

## II. DISCUSSION

The Immigration and Nationality Act ("INA") governs, in pertinent part, the civil detention of aliens pending a decision on removal. *See generally* 8 U.S.C. §§ 1225, 1226. As the Supreme Court and the Second Circuit have explained, "[d]etention during removal proceedings is a constitutionally valid aspect of the deportation process." *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020); *see Demore v. Kim*, 538 U.S. 510, 523 (2003). Over the decades, Congress has enacted certain statutory changes to the INA. *See* Pub. L. 104-208, 110 Stat. 3009 (Sept. 30, 1996) (the "Illegal Immigration Reform and Immigrant Responsibility Act" or "IIRIRA"); Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (Jan. 29, 2025) (the "Laken Riley Act"). In addition, Presidents have interpreted and enforced the provisions of the INA differently.

Pertinent here, prior to 1996, the INA had established two different schemes for the "exclusion" and "deportation" of aliens, depending on whether an alien had successfully, even if illegally, effected an "entry" into the United States. *Judulang v. Holder*, 565 U.S. 42, 45 (2011); *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 223 (BIA 2025); *see also* 8 U.S.C. § 1101(a)(13) (1994) (defining "entry" as "any coming of an alien into the United States . . ."). Put another way, the old scheme turned on whether "an alien [was] already here." *Judulang*, 565 U.S. at 45. Congress, however, changed the law in 1996 to remove the focus on physical entry and, instead,

focus on lawful admission. *Hurtado*, 29 I. & N. Dec. at 223 ("In 1996, Congress enacted IIRIRA, which, among other things, substituted the term 'admission' for 'entry,' and replaced deportation and exclusion proceedings with removal proceedings."); H.R. Rep. No. 104-469, pt. 1, at 225 (1996) (explaining that the "pivotal factor in determining an alien's status" would be "whether or not the alien has been lawfully admitted").

Under the current scheme, the INA groups together for the same treatment arriving aliens (*i.e.* aliens who have not yet entered) and aliens who are already present in the United States but did not enter lawfully. Specifically, the statute expressly provides that "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Moreover, pursuant to Section 1225(a), any "alien *present* in the United States *who has not been admitted* or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a) (emphasis added). Put another way, an "applicant for admission" is defined to include both aliens at the border and any alien who is "*present* in the United States" but who was not authorized *lawfully* to be here. *Id.* (emphasis added); *see id.* § 1101(a)(13)(A).

Central to the issue in this case, Section 1225(b)(2) provides that, with limited exceptions not implicated here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Thus, Section 1225(b)(2) mandates detention for certain aliens. *See United States v. Kahn*, 5 F.4th 167, 174 (2d Cir. 2021) ("what follows the word 'shall' is 'mandatory'"). In light of the definitions set forth above, Section 1225(b)(2) provides mandatory

detention "in the case of" any alien who either is already "*present* in the United States" but has not been authorized lawfully to be here, or who arrives at the border, "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added); *see id.* §§ 1225(a), 1101(a)(13)(A).

Section 1225(b)(2) clearly applies to Petitioner. As Petitioner points out, "[t]he facts of this case are undisputed." Reply at 1. There is no dispute that Petitioner "unlawfully entered the United States," Hampton Decl. ¶ 3, and he was "not then admitted or paroled after inspection," Pet., Ex. A at 1. As such, Petitioner is an "alien present in the United States who has not been admitted," which, the statute expressly dictates, means he is "deemed . . . an applicant for admission." 8 U.S.C. § 1225(a).

This is, therefore, "the case of an alien who is an applicant for admission" governed by Section 1225(b)(2). Moreover, no "examining immigration officer" has "determine[d]" that Petitioner is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). On the contrary, after Petitioner's apprehension, he was "found" to be "inadmissible" and "subject to removal." Record at 2; Pet., Ex. A; *see* Hampton Decl. ¶ 5. Thus, under the plain language of Section 1225(b)(2), Petitioner is subject to mandatory detention pending the resolution of his removal proceedings. *See* 8 U.S.C. § 1225(b)(2)(A) ("shall be detained").

The Court is aware that a number of judges in this District, and elsewhere, have ruled otherwise. *See, e.g.*, *Lopez Benitez v. Francis*, No. 25-cv-5937 (DEH), 2025 WL 2371588, at *4 (S.D.N.Y. Aug. 13, 2025); *Tumba v. Francis, et al.*, No. 25-cv-8110 (LJL), 2025 WL 3079014, at *3 (S.D.N.Y. Nov. 4, 2025); *J.G.O. v. Francis*, No. 25-cv-7233 (AS), 2025 WL 3040142, at *2 (S.D.N.Y. Oct. 28, 2025). These judges have ruled that 1225(b)(2) simply does not apply to any alien who is "already in the country." *Lopez Benitez*, 2025 WL 2371588, at *4 (quoting *Jennings*,

583 U.S. at 289); *accord J.G.O.*, 2025 WL 3040142, at *3; *Tumba*, 2025 WL 3079014, at *3. In so ruling, they ignore the plain text of Section 1225(a), which unambiguously defines the term "applicant for admission," used in Section 1225(b)(2), to include an "alien *present in the United States* who has not been admitted." 8 U.S.C. § 1225(a) (emphasis added). Ignoring the text and history of the INA, these judges equate mere presence in the United States with "lawful entry." 8 U.S.C. § 1101(a)(13)(A).

Specifically, these judges conclude that an alien must "actively seek admission" to be eligible for mandatory detention pursuant to Section 1225. *J.G.O.*, 2025 WL 3040142, at *2; *see Lopez Benitez*, 2025 WL 2371588, at *6; *Tumba*, 2025 WL 3079014, at *3. As quoted above, Section 1225(b)(2) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained . . . ." 8 U.S.C. § 1225(b)(2)(A). As the court in *J.G.O.* explains, this "language clearly yields two requirements: The alien must be 'an applicant for admission' and an immigration officer must determine that the applicant 'is not clearly and beyond a doubt entitled to be admitted.'" *J.G.O.*, 2025 WL 3040142, at *2 (quoting 8 U.S.C. § 1225(b)(2)). This Court agrees with that much. However, other judges in this District have proceeded to rule that there is an implicit "third statutory requirement that the alien actively seek admission" in order to be eligible for mandatory detention. *Id.*; *see Lopez Benitez*, 2025 WL 2371588, at *6; *Tumba*, 2025 WL 3079014, at *3. In particular, they contend that the term "seeking admission" must import an additional prerequisite for mandatory detention lest there be "mere surplusage" in the statute. *Lopez Benitez*, 2025 WL 2371588, at *6; *see J.G.O.*, 2025 WL 3040142, at *4; *Tumba*, 2025 WL 3079014, at *3. These judges reason that "'seeking admission' might mean . . . some active desire or process toward admission." *J.G.O.*, 2025 WL 3040142, at *3;

8

*accord Tumba*, 2025 WL 3079014, at *3. Furthermore, they conclude, someone who is "already here . . . cannot 'seek admission.'" *J.G.O.*, 2025 WL 3040142, at *3; *see Lopez Benitez*, 2025 WL 2371588, at *4; *Tumba*, 2025 WL 3079014, at *3.

There is no support in statutory text, precedent, or legislative history for the conclusion that Section 1225(b)(2) does not apply to aliens who are "already here" after having illegally entered the country. Every judge agrees, because the statute plainly states, that the mandatory detention provision of Section 1225 applies to an "alien who is an applicant for admission" if other statutory conditions are met. 8 U.S.C. § 1225(b)(2)(A). As explained above, the term "applicant for admission" in Section 1225 is specifically defined to include an "alien *present in* the United States who has not been admitted." 8 U.S.C. 1225(a) (emphasis added). Furthermore, "admitted" and "admission" are specifically defined in terms of "*lawful*" entry. 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Thus, ruling that the mandatory detention provision of 1225 categorically does not apply to aliens who are present in the United States as a result of their illegal entry into the country flies in the face of defined statutory text. *See Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 59 (2024) ("When Congress takes the trouble to define the terms it uses, a court must respect its definitions."). Moreover, this ruling flies in the face of Congress' decision, codified in the IIRIRA, to change the immigration system that had turned on whether "an alien [was] already here," and enact new laws for removal proceedings that focused on *lawful admission* in contrast to physical entry. *Judulang*, 565 U.S. at 45; *see Hurtado*, 29 I. & N. Dec. at 223; H.R. Rep. No. 104-469, pt. 1, at 225 (1996).

Indeed, while purporting to guard against one word of "surplusage" in the statute, judges in this District would virtually nullify Section 1225(b)(2). *Lopez Benitez*, 2025 WL 2371588, at *6; *see J.G.O.*, 2025 WL 3040142, at *4; *Tumba*, 2025 WL 3079014, at *3. On their reading, it is

9

not possible to be both already "present in the United States" and actively "seeking admission," so, according to these judges, mandatory detention under Section 1225(b) is applicable only to aliens detained at the border. 8 U.S.C. §§ 1225(a), 1225(b)(2)(A); *see J.G.O.*, 2025 WL 3040142, at *4; *Lopez Benitez*, 2025 WL 2371588, at *8. That simply is not the system defined by Section 1225, which groups together for the same treatment aliens arriving at the border and aliens who are present illegally in the United States. *See* 8 U.S.C. §§ 1225(a), 1225(b)(2)(A).

In any event, nothing in the text of Section 1225 or the logic of the immigration system supports a ruling that "seeking admission" is an *additional requirement* for mandatory detention. Because "admission" is defined as "lawful entry of the alien into the United States after inspection and authorization by an immigration officer," 8 U.S.C. § 1101(a)(13)(A), "seeking admission" means seeking such lawful entry, 8 U.S.C. § 1225(b)(2)(A). By ruling that "seeking admission" is an additional requirement for mandatory detention, judges in this District establish a perverse system in which an alien becomes subject to harsher treatment only upon actively seeking "lawful" status. 8 U.S.C. § 1225(b)(2)(A); *id.* § 1101(a)(13)(A).

The purported concern about "surplusage" in the statute is misplaced, moreover. *Lopez Benitez*, 2025 WL 2371588, at *6; *see J.G.O.*, 2025 WL 3040142, at *4; *Tumba*, 2025 WL 3079014, at *3. Section 1225 provides for mandatory detention "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted . . . ." 8 U.S.C. § 1225(b)(2)(A). One reasonable interpretation of the statute is that an alien is subject to mandatory detention if he is either present in the United States illegally or is at the border (*i.e.*, he meets the definition of an "applicant for admission"), *provided that* where such an alien is actively "seeking" lawful status, an "immigration officer" must "determine[]" that he "is not clearly and beyond a doubt entitled to

be admitted . . . ." 8 U.S.C. § 1225(b)(2)(A). This reading avoids surplusage without gutting the application of the statute that Congress enacted. *See United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023).

Another possibility is that the phrase "an alien seeking admission" is used as a synonym for "an alien who is an applicant for admission." 8 U.S.C. § 1225(b)(2)(A). On this reading, the entire provision deals with one scenario: "the case" of an alien who has not been lawfully admitted and who an immigration officer determines is not clearly entitled to be admitted. *Id.* This reading has the benefit of not inserting the word "actively" into a statute where is does not appear. *See Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 215 (2020) (cautioning judges to avoid the "temptation" to "read into statutes words that aren't there"). The judges who reject this reading concede that their reasoning "might sound counterintuitive," since "applying for something" ordinarily is synonymous with "seeking something." *Tumba*, 2025 WL 3079014, at *3; *see J.G.O.*, 2025 WL 3040142, at *3 ("How can an 'applicant for admission' not 'seek admission?'"); *Lopez Benitez*, 2025 WL 2371588, at *4. This concession, however, does not deter them from reaching their conclusion.

Worse still, as a matter of text and logic, the proposition that someone who is physically present in the country cannot also be "seeking admission" to the United States does not hold water. In this case, as in *Lopez Benitez*, *J.G.O.*, and *Tumba*, Petitioner filed an application for asylum. Pet. ¶ 2; *Lopez Benitez*, 2025 WL 2371588, at *1 (Petitioner "filed an asylum application"); *J.G.O.*, 2025 WL 3040142, at *1 (Petitioner "applied for asylum"); *Tumba*, 2025 WL 3079014, at *1 ("Petitioner has a pending asylum application."). Yet the judges in those cases never explain why seeking asylum is insufficient to meet their purported requirement, under 1225(b)(2), that an alien engage in "some active desire or process toward admission." *J.G.O.*, 2025 WL 3040142, at *3;

11

*see Lopez Benitez*, 2025 WL 2371588, at *6; *Tumba*, 2025 WL 3079014, at *4. If actively "seeking admission" is a distinct requirement for mandatory detention pursuant to 1225, seeking asylum *is* "seeking admission," within the meaning of the statute, since "admission" is defined in terms of "lawful" status, 8 U.S.C. § 1101(a)(13)(A), not physical presence on U.S. soil.

As such, because it is undisputed that Petitioner is an alien, Pet ¶ 8, who illegally entered the country, Hampton Decl. ¶ 3, is present in the United States without being admitted, Pet., Ex. A at 1, was determined not to be clearly entitled to be admitted, Record at 2, and who is actively seeking admission (*i.e.*, lawful status) through asylum, Pet., Ex. B, the Court concludes that 8 U.S.C. § 1225(b)(2) clearly applies to Petitioner. Thus, Petitioner is subject to mandatory detention pending the resolution of his removal proceedings. *See* 8 U.S.C. §§ § 1101(a)(13)(A); 1225(a); 1225(b)(2)(A).

In ruling that aliens unlawfully present in the United States are not subject to mandatory detention pursuant Section 1225(b)(2), a number of judges have also invoked the Laken Riley Act, Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (codified as amended at 8 U.S.C. § 1226(c)(1)(E)), which was recently enacted as part of Section 1226. *See Lopez Benitez*, 2025 WL 2371588, at *7; *J.G.O.*, 2025 WL 3040142, at *3; *Tumba*, 2025 WL 3079014, at *3. The Act makes aliens subject to mandatory detention if they are deemed "inadmissible" under certain statutory provisions and are charged with, or admit to committing, certain crimes. *See* 8 U.S.C. §§ 1226(c)(1)(E)(i), 1226(c)(1)(E)(ii); 8 U.S.C. §§ 1182(a)(6)(A), 1182(a)(6)(C), 1182(a)(7). Feigning oblivion to the impetus for the Laken Riley Act, these judges ask, if "'the great number of undocumented immigrants who currently live' in this country" are "*already* subject to mandatory detention" under Section 1225, "[w]hy, then, would Congress have thought it necessary" to enact a law mandating detention based on certain crimes? *Tumba*, 2025 WL 3079014, at *4 (emphasis in original)

(quoting *J.G.O.*, 2025 WL 3040142, at *3). Thus, these judges contend, their interpretation of Section 1225(b)(2) is necessary to avoid rendering the later-enacted Section 1226(c)(1)(E) superfluous. *See Lopez Benitez*, 2025 WL 2371588, at *7; *J.G.O.*, 2025 WL 3040142, at *4; *Tumba*, 2025 WL 3079014, at *4.

In the hands of certain judges, a law that clearly was enacted to strengthen immigration enforcement transmutes into a reason to defang the law on the books and order the government "immediately" to "release" into the country aliens whom immigration officials have concluded are not entitled to remain in the United States. *Lopez Benitez*, 2025 WL 2371588, at *15. This Court declines to participate in that alchemy. As the legislative history of the Laken Riley Act makes clear, many members of Congress "thought it necessary" to enact a new law mandating detention in more circumstances because of their perception that the Executive Branch had failed to enforce the detention options that were already available to it. *Tumba*, 2025 WL 3079014, at *4. As one sponsor of the Laken Riley Act explained, a young woman was killed by an alien who "was unlawfully . . . released by the Biden administration" after he illegally entered the country. 171 Cong. Rec. S132 (statement of Sen. Katie Britt). Similarly, a co-sponsor of the Act in the House of Representatives had argued earlier that "our immigration laws are now routinely ignored, altered, or perverted by the whims of individuals within this administration." *The Border Crisis: Is the Law Being Faithfully Executed?: Hearing Before the Subcomm. on Immigration Integrity, Security, and Enforcement*, 118th Cong. 2 (2023) (statement of Rep. Tom McClintock).

In any event, this Court's reading of Section 1225(b)(2) does not render the Laken Riley Act superfluous. *See Chavez v. Noem*, 3:25-cv-02325-CAB-SBC, 2025 WL 2730228, at *5 (S.D. Cal. Sept. 24, 2025). Prior to the Laken Riley Act, Section 1226(c) of the INA already provided for mandatory detention of aliens who were "inadmissible" or "deportable" because they had been

13

convicted of certain crimes. 8 U.S.C. §§ 1226(c)(1)(A)–(B); *see id.* § 1226(c)(1)(C); *Jennings*, 583 U.S. at 288. The Laken Riley Act made detention mandatory for certain additional aliens who are deemed "inadmissible" under particular statutory provisions and are "charged" with, "arrested for," "convicted of," *or* "admit[]" to certain, enumerated offenses. 8 U.S.C. § 1226(c)(1)(E). Unlike Section 1225(b)(2), the Laken Riley Act mandates detention for an alien who, for example, fraudulently procured a "visa," or "other documentation," based on false information and, thereafter, was arrested for "assault of a law enforcement officer" or one of the other offenses enumerated in the Act. 8 U.S.C. §§ 1226(c)(1)(E)(i), 1182(a)(6)(C)(i), 1226(c)(1)(E)(ii); *see also Jennings*, 583 U.S. at 288, 289; *Chavez*, 2025 WL 2730228, at *5. Furthermore, since, as described above, there is an exception from mandatory detention under Section 1225(b)(2) for an alien who is determined by an examining immigration officer to be clearly entitled to be admitted, the Laken Riley Act fills a gap in the mandatory detention regime for such an alien who is later charged with an offense enumerated in the Act. *See* 8 U.S.C. §§ 1225(b)(2), 1226(c)(1)(E).

In ruling that 1225(b)(2) categorically does not apply to aliens who are physically present in the United States, some judges have pointed out that the broader reading of 1225(b)(2) would narrow the universe of aliens subject only to discretionary detention pursuant to 1226(a). *See Benitez*, 2025 WL 2371588, at *8; *Tumba*, 2025 WL 3079014, at *4. Indeed, one judge went so far as to assert the broader reading of Section 1225(b)(2) would "all but read Section 1226 off the books." *Tumba*, 2025 WL 3079014, at *4. That assertion is simply not true. As the court in *Lopez Benitez* concedes, the broader, more natural reading of Section 1225(b)(2) would not reach, for example, "noncitizens who are lawfully admitted . . . and who then remain present unlawfully." *Lopez Benitez*, 2025 WL 2371588, at *8. That "subset" of aliens remains governed by Section 1226 on any reading of 1225. *Id.* Moreover, preserving more opportunities for discretionary

14

detention pursuant to 1226(a) is not a sufficient reason to "all but read [Section 1225(b)(2)] off the books." *Tumba*, 2025 WL 3079014, at *4.

More fundamentally, as the Supreme Court has explained, "Section 1226 generally governs the process of arresting and detaining" aliens pending a determination whether they have a "right to remain here." *Jennings*, 583 U.S. at 288. Here, however, Petitioner has been on notice since his arrival in this country that he does not have a right to remain here and is "subject to removal" because, as he concedes, he is an "alien present in the United States without being admitted or paroled." Pet., Ex. A. As such, by its plain terms, Section 1225 applies to Petitioner.

Several courts in this District have lamented that "[a]cross the country," the government had previously detained and released aliens pursuant to Section 1226(a) and "then, only afterward, argued" that the aliens were subject to mandatory detention under Section 1225(b)(2). *J.G.O.*, 2025 WL 3040142, at *2. They have concluded that, in effect, the government has forfeited the opportunity to enforce 1225(b)(2). *See Lopez Benitez*, 2025 WL 2371588, at *8; *J.G.O.*, 2025 WL 3040142, at *4. However, it is well established that the Executive Branch has broad discretion to make enforcement decisions in "the immigration context." *United States v. Texas*, 599 U.S. 670, 679 (2023). Furthermore, the Executive Branch, including a different presidential administration, is entitled to "react and adjust to the ever-shifting public-safety and public-welfare needs of the American people." *Id*. at 680. A failure by the Executive Branch to enforce a statutory provision, or its conclusion that the law does not apply, does not nullify a duly-enacted law. *See* U.S. Const., art. I, § 7; *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024). There is simply no authority for the proposition that if one presidential administration fails to enforce a statute, the next administration cannot enforce it, even though the statute clearly applies, according to its plain terms, and no promises not to enforce it have been made.

15

Petitioner here argues that, by statute, if he was originally detained pursuant to Section 1226, "any re-detention *must* occur pursuant to" Section 1226. Pet. ¶ 25 (emphasis added). That is not what the relevant statute says. Section 1226 provides that if the government exercises discretion to release an alien, pursuant to 1226(a), the government "at any time *may*" decide to "rearrest the alien under the original warrant." 8 U.S.C. § 1226(b) (emphasis added). It does not say, as Petitioner contends, that if an alien is released pursuant to Section 1226 any rearrest must also be made pursuant to Section 1226 with any attendant protections under that statute. The provision Petitioner cites empowers, rather than restrains, the government.

In any event, having concluded that Section 1225 governs this case, the Court concludes that Petitioner is not entitled to be released, nor is he entitled to a bond hearing. *See Jennings*, 583 U.S. at 297. The Petition is DENIED in its entirety.

### III.   CONCLUSION

For the reasons set forth above, the Petition is DENIED. The Clerk of Court respectfully is requested to close this case.

**SO ORDERED.**

Date:   **December 4, 2025**　　　　　　　　　　　　　　　　*[signature]*
　　　　**New York, NY**　　　　　　　　　　　　　**MARY KAY VYSKOCIL**
　　　　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**

16